*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUSSELL ALLEN HIGDON,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2025
11:57 AM

No. 363911
Cheboygan Circuit Court
LC No. 2022-006303-FC

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant, Russell Allen Higdon, appeals by right his convictions, following a jury trial, of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (physically helpless victim), and one count of first-degree home invasion, MCL 750.110a(2)(b). The jury acquitted Higdon of two counts of first-degree criminal sexual conduct (CSC-I). The trial court sentenced Higdon to serve terms of 10 to 15 years' imprisonment for his CSC-III convictions and a consecutive term of 130 months to 20 years' imprisonment for his home-invasion conviction. We affirm Higdon's convictions and sentences.

## I. BACKGROUND

This case arises from Higdon sexually assaulting the victim during a break-in in July 2021. The victim and Higdon had been good friends since they were teenagers. Higdon had also been good friends with the victim's boyfriend. On the night of the assault, the victim and her boyfriend fought. The victim went to sleep in the bedroom of her daughter, who was not home, and the victim's boyfriend left the house. The boyfriend called Higdon to cancel their preexisting plans to have drinks at the house and invited Higdon to meet him at a bar instead. Higdon did not meet the boyfriend at the bar.

The victim testified that she is a heavy sleeper. But sometime late that evening or early the next morning, she woke to Higdon's fingers in her vagina and his mouth "down there as well." By "down there," the victim testified that she meant her vagina. When the victim realized that it was not her boyfriend, Higdon bit her vagina and offered to have intercourse with her. The victim immediately got out of bed, went to her bedroom, and locked the door. She testified that she knew

it had been Higdon from his voice and because, when she had pushed his head away, he had been bald. Higdon later testified that he had been bald since he was 19 years old.

At about 1:00 a.m., the victim's boyfriend left the bar to go two-tracking.[1] He became stuck on a trail. He testified that he called Higdon and asked him to retrieve tow straps from his garage, which was about 100 feet from the house. According to the boyfriend, when Higdon arrived at his truck, Higdon stated that he had been to the boyfriend's house but had not been able to find anything. The boyfriend also testified that Higdon, who typically wore a hat, took a hat off the dashboard of his truck.

Higdon testified in his own defense. He testified that the boyfriend had misunderstood him and that he had agreed to look in his *own* garage for chains or tow straps, which he typically had at his house. Higdon's mother testified that she had locked up the car keys to keep her nephew from taking them without permission, that Higdon was home when she went to bed, and that he woke her at about 1:00 a.m. to ask for the car keys to help the victim's boyfriend.

Ultimately, the victim's boyfriend was stuck in the woods until the next morning. The boyfriend testified that, when he arrived home at about 7:00 a.m. or 8:00 a.m., he could see that the victim had been crying. He was concerned that she was still upset about their fight and asked her what had happened. The boyfriend testified that the victim "proceeded to give me—basically tell me what had happened but not the big details of what had happened." The victim and her boyfriend both testified that he told the victim to call the police. The boyfriend testified that, when he went into the bedroom of the victim's daughter, Higdon's hat was on the bed. Both the victim and boyfriend testified that they knew it was Higdon's hat because they had seen him wear it many times.

The victim testified that she did not immediately call the police. She testified that she was unsure how to proceed and thought that the incident might have been a mistake. Both the boyfriend and the victim testified that the boyfriend asked a friend to help persuade the victim to call the police. After discussions with a police trooper, the victim met with Higdon in a public place to attempt to get him to admit to and apologize for what he had done. The victim recorded their conversation. The prosecution played the recording for the jury. In part, Higdon stated that "[m]aybe that's part of why it happened is because of all the shit that happens between you and [the boyfriend]" and that "what you want to hear is I showed up, felt sorry for you, I made a mistake. I don't [know] how I'll forgive myself. I'm scared it even happened."

At the time of the offense, Higdon had been on probation for a conviction of attempted fourth-degree criminal sexual conduct. A police sergeant testified that, during that incident, Higdon had gone into the home of a woman without permission, that he performed sex acts despite that woman having said "no," and that he ultimately stated that "he should have stopped and that he was wrong and that he was sorry."

---

[1] We understand "two-tracking" to refer to use of an off-road vehicle or all-terrain vehicle. "Two-track" refers to a trail or road where the wheel tracks of vehicles have left two distinct lines, often in a dirt or gravel surface.

The jury found Higdon guilty of two counts of CSC-III on the basis that he had sexually assaulted the victim with his fingers and mouth while the victim was helpless. The jury acquitted him of two counts of CSC-I on the theory that he had sexually assaulted the victim during the commission of another felony. Finally, the jury found Higdon guilty of home invasion. The trial court sentenced Higdon as previously described.

## II. SUFFICIENCY OF THE EVIDENCE

Higdon raises sufficiency arguments in both his brief filed by counsel and his *in propria persona* brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005). Ultimately, neither argument is persuasive.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). This Court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id.*

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Wolfe*, 440 Mich at 514-515. Circumstantial evidence and reasonable inferences from the evidence are sufficient to support a defendant's conviction. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011).

In Higdon's brief by counsel, he argues that the evidence was insufficient to support one of his CSC-III convictions because it was impossible for him to have bitten the victim on the vagina. We reject this argument because the jury was permitted to use common sense to interpret the victim's testimony as referring to her external genitalia.

The pertinent elements of CSC-II are as follows:

> (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> * * *
>
> (c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless. [MCL 750.520d.]

" 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

Higdon argues that it was impossible for him to have bitten the victim's vagina because the vagina is inside the body. Jurors may use common sense and everyday experience to evaluate evidence. *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991). In *People v Lemons*,

454 Mich 234, 254; 562 NW2d 447 (1997), the Michigan Supreme Court upheld a criminal sexual conduct conviction as being supported by sufficient evidence of penetration when the victim testified that "she performed oral sex and placed her face on the defendant's vagina." In this case, the victim testified that Higdon's mouth was "[o]n [her] vagina." Further, when asked where Higdon bit her, the victim testified, "My vagina." Consistent with *Lemons*, the victim's testimony that Higdon's mouth was on her vagina was sufficient to establish that Higdon performed cunnilingus.

Accordingly, when we view the evidence in the light most favorable to the prosecution and consider the jury's ability to use common sense when evaluating evidence, the evidence was sufficient to support Higdon's CSC-III conviction despite that—or even because—the victim testified that Higdon placed his mouth on and bit her vagina.

In Higdon's Standard 4 brief, Higdon argues that the evidence was insufficient to establish his identity as the perpetrator. We reject this argument because the victim's testimony, circumstantial evidence, and Higdon's taped statements supported his identification.

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). A positive identification by a witness may provide sufficient evidence of identity, including when conflicting testimony is present. *People v Davis*, 241 Mich App 697, 699-700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.* at 700.

Here, even though the room was dark and the victim could not see her assailant, the victim testified that she knew that it was Higden from his voice and because she perceived that her assailant had a bald head when she pushed him away. Higdon had been bald since he was 19 years old. To the extent that it was dark when the victim identified him, the jury could give her testimony as much, or as little, weight as that circumstance allowed.

Further circumstantial evidence of identity supported Higdon's conviction. The victim's boyfriend found a hat in the bedroom, which the victim and her boyfriend had seen Higdon wear numerous times. The boyfriend testified that Higdon typically wore a hat. But the boyfriend testified that he had gave Higdon a hat in the woods and stated that Higdon took it off of the dashboard of his truck. Further, when the victim confronted Higdon, he made inculpatory statements, including that "[m]aybe that's part of why it happened is because of all the shit that happens between you and [the boyfriend]," and "what you want to hear is I showed up, felt sorry for you, I made a mistake. I don't how I'll forgive myself. I'm scared it even happened." Higdon's arguments regarding the credibility of the victim and law enforcement witness are unpersuasive.[2] In sum, there was sufficient evidence to sustain the convictions.

---

[2] Higdon argues that the victim did not contact the police until after she had time to contrive a story and consult with others. These arguments concern weight and credibility, and this Court will not interfere with the role of the jury to determine these issues. Ultimately, the victim's testimony

## III.  SENTENCING

Higdon argues that the trial court improperly imposed consecutive sentences for his CSC-III and home-invasion convictions and that the court improperly assessed points under Offense Variable (OV) 4 (concerning psychological injury to the victim).  We reject both arguments.

To preserve an issue involving consecutive sentencing for appeal, the defendant must raise it at sentencing, in a motion for resentencing, or in a motion to remand.  *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016).  Higdon's consecutive-sentencing issue is preserved because he asked the court to impose concurrent sentences.  However, Higdon's argument regarding OV 4 is not preserved because he did not raise this issue before the trial court or in a motion to remand.

This Court reviews for an abuse of discretion a court's decision to impose a consecutive sentence.  *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016).  The court abused its discretion if its decision fell outside the range of principled outcomes.  *Id*.  This Court reviews de novo questions of statutory interpretation regarding whether a consecutive sentence can be imposed.  *Clark*, 315 Mich App at 224.  When this Court engages in de novo review, this Court reviews the issue without deference to the lower court.  *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

### A.  CONSECUTIVE SENTENCES

Higdon argues that the trial court erred by imposing consecutive sentences because the court relied on facts that the sentencing guidelines already contemplated to justify the consecutive sentences.  We disagree.  The court sufficiently justified its decision to impose consecutive sentences.

A trial court must specify whether a defendant's sentences "is to run consecutively to or concurrently with any other sentence the defendant is or will be serving, as provided by law." MCL 769.1h(1).  The trial court must articulate its rationale for imposing a consecutive sentence sufficient to allow appellate review.  *Norfleet*, 317 Mich App at 665.  Consecutive sentences are permissible only when a statute specifically authorizes them.  *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012).  The statute for first-degree home invasion is one such statute.  See MCL 750.110a(8).  Consecutive or not, a criminal sentence must be proportionate to the offense and the offender.  *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017).

---

and the circumstantial evidence, when viewed in the light most favorable to the prosecution, provided sufficient evidence to support Higdon's identity as the perpetrator.

He also argues that a police trooper perjured himself regarding whether he instructed the victim to photograph the hat.  At trial, the trooper testified that he did not know when the picture was taken.  The victim testified that she could not remember whether the trooper asked her to photograph the hat.  There are no facts in the record to support Higdon's assertion that the trooper committed perjury when he testified at trial that he did not know when the picture was taken.

First, Higdon argues that the trial court improperly relied on the fact that the sexual assaults occurred during the home invasion as a basis for imposing consecutive sentences, when the first-degree home invasion statute already contemplated the commission of another felony. This aspect of Higdon's argument is abandoned. He provides no legal support for his argument that a consecutive sentence is improper if the criminal statute contemplates that another crime has occurred. Higdon does not provide any existing authority related to this issue. Nor does he argue that there is a basis to extend other authority into this area. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). A party abandons its assertions by failing to brief them. *Id*. This issue is abandoned.[3]

Second, Higdon argues that the trial court's rhetorical question about what should happen when a person invades the sanctity of someone else's home was an insufficient rationale to support consecutive sentencing because the statement was purely speculative and the sentencing guidelines already address this conduct. Again, Higdon again fails to provide legal authority to support his argument and fails to argue that other authority should be extended into this area. This issue is also abandoned. See *id*.[4]

Third, Higdon argues that the Legislature already authorized a statutory maximum sentence of 20 years for home invasion. We will not read language into an unambiguous statute. *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005). The statute provides that "[h]ome invasion in the first degree is a felony punishable by imprisonment for not more than 20 years or a fine of not more than $5,000.00, or both." MCL 750.110a(5). But the Legislature authorized consecutive sentencing for first-degree home invasion. See MCL 750.110a(8). The trial court sentenced Higdon to serve not less than 130 months nor more than 20 years for his home-invasion conviction. The statute allows this. The trial court also ordered that sentence to be consecutive to his other sentences. This was also allowed. Nothing in the statutory language prohibits the

---

[3] Even if the argument were not abandoned, it would fail on the merits. First-degree home invasion occurs when a person "breaks and enters a dwelling with intent to commit a felony" or "breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault." MCL 750.110a(2). As part of the same statute, the Legislature authorized consecutive sentencing for first-degree home invasion. See MCL 750.110a(8). If the trial court could not impose a consecutive sentence because first-degree home invasion already contemplates the commission of another felony, the consecutive-sentence provision would never apply. Regardless, the home-invasion statute does not mention or contemplate that the second felony might be a severe felony, such as sexual assault, which occurred in this case.

[4] But even if the issue were not abandoned, Higdon's argument fails. He argues that the sentencing guidelines for home invasion already address the commission of sexual penetrations. But that does not address the actual basis of the trial court's decision, which was that both home invasion and sexual assault were serious violations of safety and security. No OV specifically addresses this aggravating factor.

combined term of the consecutive sentences from exceeding 20 years, and we decline to read that language into the statute.

Fourth, Higdon argues that the trial court's justification that he had committed the offense while on probation for a similar offense was an insufficient reason for imposing consecutive sentences because his prior misdemeanors were already accounted for as part of his prior record variable (PRV) score. Again, Higdon fails to provide authority or argument related to any authority to support his argument, and we deem the issue abandoned. See *Iannucci*, 314 Mich App at 545.[5]

Ultimately, the trial court sufficiently articulated its rationale for imposing consecutive sentences. Given that Higdon sexually assaulted the victim as part of a home invasion while on probation for sexually assaulting another woman during a home invasion, the court's decision to impose consecutive sentences did not fall outside the range of principled outcomes.

## B. OV 4

Next, Higdon argues that the trial court incorrectly assessed 10 points under OV 4 because there was insufficient evidence that the victim suffered a severe psychological injury. We disagree. Higdon has not established that the trial court's finding was clearly erroneous, let alone a plain error affecting his substantial rights.

The trial court must assess 10 points for OV 4 if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Whether the victim has sought treatment does not determine whether the injury may require professional treatment. MCL 777.34(2). The trial court may not assume that severe psychological injury will normally occur as the result of a crime. *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

Here, the victim provided a recorded statement, stating that she had almost lost her well-being, she wanted to leave because she wanted a new life, and she was exhausted and tired. When asked at trial how Higdon's actions had affected her, the victim testified that it had "been a bit of a difficult time so far." She had spoken with a counselor but had not really felt comfort. The victim also testified that "there's really not a whole lot you can do when you're still in your home where it's supposed to be your safe zone and it's not anymore." Accordingly, the victim's testimony established that she had suffered psychological effects from the crime that included feelings of being unsafe, exhausted, and stripped of her sense of well-being. The victim sought treatment but the treatment had been unsuccessful. Higdon has not established that the trial court's finding that the victim suffered a serious psychological injury requiring treatment was clearly

_____

[5] Even were the argument not abandoned, we would reject Higdon's argument on the basis that the PRVs do not account for the similar nature of Higdon's past and present conduct.

erroneous. Having not established any error at all, Higdon has not established that a clear or obvious error affected his substantial rights.

## IV. CONSTITUTIONAL ARGUMENTS

In his Standard 4 brief, Higdon raises various constitutional arguments. We reject these unpreserved arguments, which he has largely failed to support.

To preserve an issue for appeal, the defendant must raise it before the trial court at the time that the trial court has an opportunity to correct the error. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Higdon did not properly raise these constitutional issues before the trial court, so they are unpreserved.

Generally, this Court reviews de novo questions of constitutional law. *People v Smith*, 478 Mich 292, 298; 733 NW2d 351 (2007). In criminal cases, this Court reviews unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*. To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—generally meaning that the error affected the outcome of the proceedings. *People v Hines*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363151); slip op at 6, citing *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022). "If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Hines*, ___ Mich App at ___; slip op at 6, citing *Carines*, 460 Mich at 763-764. Higdon's claims largely fail on the first prong.

First, Higdon argues that he was deprived of his double-jeopardy protections because he was charged with four counts of criminal sexual conduct for only two offenses. His argument lacks merit because all the charges against Higdon contained elements that the other charges did not.

The Fifth Amendment of the United States Constitution protects a criminal defendant from being "twice put in jeopardy of life or limb . . . ." *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010), quoting US Const, Am V. The Michigan Constitution contains a parallel provision that this Court construes consistently with the Fifth Amendment. *Szalma*, 487 Mich at 716. See Const 1963, art 1, § 15.

> The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. [*People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted).]

If the Legislature has not clearly indicated its intent regarding the possibility of multiple punishments, this Court applies the "abstract legal elements" test. *People v Fredell*, 340 Mich App 221, 232; 985 NW2d 837 (2022), rev'd ___ Mich ___ (2024) (Docket No. 164098). When a

defendant's conduct violates two different statutes, this Court must determine whether the offenses have the same elements. *People v Ream*, 481 Mich 223, 240; 750 NW2d 536 (2008). If each offense requires proof of a fact that the other does not, multiple convictions do not violate a defendant's double-jeopardy rights. *Id*. at 227-228. "This is true even if there is a substantial overlap between the proofs the prosecution must offer for each offense." *People v Nutt*, 469 Mich 565, 576; 677 NW2d 1 (2004).

Here, the prosecution charged Higdon with five offenses: (1) CSC-I involving his mouth and the victim's genital opening during the commission of a home invasion; (2) CSC-I involving his fingers and the victim's genital opening during the commission of a home invasion; (3) home invasion; (4) CSC-III involving his mouth and the victim's genital opening while the victim was physically helpless; and (5) CSC-III involving his fingers and the victim's genital opening while the victim was physically helpless.

Under the prosecution's theory of counts one and two, it was required to prove that Higdon committed the criminal sexual conduct during the commission of another felony; it did not have to prove that the victim was physically helpless. See MCL 750.520b(1)(c). However, under the prosecution's theory of counts four and five, it had to prove that the victim *was* physically helpless; it was not required to prove that the penetration occurred during the commission of another felony. See MCL 750.520d. Charging Higdon with these crimes did not violate his double-jeopardy protections because each charged crime contained an element that the other did not.

Second, Higdon argues that he was charged with different degrees of criminal sexual conduct and that the jury could have been instructed to convict him of a lesser included offense. We reject this argument for the same reason as Higdon's double-jeopardy argument. To be a lesser included offense, the elements necessary for commission of the greater offense must subsume the elements necessary for commission of the lesser offense. *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010). When determining whether the elements of one crime are subsumed in another, "[t]he controlling factor is whether the lesser offense can be proved by the same facts that are used to establish the charged offense." *People v Cornell*, 466 Mich 335, 354; 646 NW2d 127 (2002) (quotation marks and citation omitted). As previously discussed, each of Higdon's crimes required the prosecution to establish different facts.

Third, Higdon argues that the prosecutor purposefully deprived him of his due-process rights by charging him with offenses that would result in his being denied bond. He has not established the factual predicate of a claim for prosecutorial vindictiveness.

The Michigan and United States Constitutions provide in part that no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. The prosecution violates a defendant's right to due process by punishing a person for asserting protected statutory or constitutional rights. *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996). To establish vindictiveness, the defendant must provide objective evidence of hostility or a threat that suggests that the defendant was deliberately penalized for exercising protected rights. *Id*. at 36.

But, like several of Higdon's arguments, this is abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims,

nor may he give only cursory treatment with little or no citation of supporting authority." *Iannucci*, 314 Mich App at 545 (quotation marks and citation omitted). Additionally, if an appellant does not assert the factual basis for a position, the appellant has abandoned it on appeal. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

Higdon merely states that his due-process rights were violated and that the prosecutor abused her charging discretion. He has provided no legal authority to support these arguments, and he has made only conclusory statements of fact without any record citations. Similarly, Higdon states that the prosecutor prevented him from consulting with an attorney and investigating witnesses without providing any evidence. No facts in the present record support these statements. These arguments have been abandoned.

Fourth, Higdon argues that the trial court's holding him without bond pending trial was a cruel and unusual punishment. Again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Iannucci*, 314 Mich App at 545 (quotation marks and citation omitted). He has merely stated that denying him bond constituted cruel or unusual punishment without any citation to legal authority.[6]

Fifth, Higdon argues that the trial court improperly gave him legal advice regarding his motion to substitute counsel, which he alleges showed extreme bias toward the prosecution. Again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Id.* at 545 (quotation marks and citation omitted). He merely states that the judge improperly gave him legal advice and that doing so showed that the judge was biased; he provides no legal authority or argument regarding this issue.

Even had Higdon properly presented a judicial-bias issue, his argument would lack merit. A judge deprives a defendant of the right to a fair trial "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). Judicial misconduct may include "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id.* at 172-173. In this case, the trial court's allegedly improper advice did not occur in front of the jury and could not have improperly influenced the jury. A judge may also demonstrate bias through a judicial ruling or opinion, but only when those rulings or opinions show a deep-seated favoritism or antagonism toward a party. *People v Willis*, 322 Mich App 579, 590; 914 NW2d 384 (2018). In context, the trial court's statement that defense counsel had "kicked [the judge's] butt plenty of times," did not show favoritism or antagonism. Rather, the statement was followed immediately by the trial court's statement that "you know, at trial he's going—I'm convinced he's going to be

---

[6] In light of Higdon's lack of rationale, it is impossible to address his arguments on the merits. However, we note that it appears that Higdon is conflating the provisions addressing excessive bail with the separate provisions addressing cruel and unusual punishment in US Const, Am VIII, and cruel or unusual punishment in Const 1963, art 1, § 16.

-10-

a constitutionally affective attorney for you," which was the trial court's reason for denying Higdon's motion to substitute counsel. Ultimately, no judicial bias is apparent from the record.

Finally, Higdon argues that his right to equal protection was violated. Both the United States and Michigan Constitutions guarantee equal protection under the law. US Const, Am XIV, § 1; Const 1963, art 1, § 2. "The constitutional guarantee of equal protection requires that the government treat similarly situated persons alike." *People v Haynes*, 256 Mich App 341, 345; 664 NW2d 225 (2003) (quotation marks and citation omitted). Here, Higdon merely states that the facts show that his right to equal protection was violated. He has abandoned this argument because he has not provided any specific argument or identified any facts establishing disparate treatment, making it impossible to analyze this issue in a meaningful way.

## V. EVIDENTIARY ISSUES

Higdon raises a variety of evidentiary issues, only one of which is preserved. To preserve an issue for appeal, a defendant must raise it before the trial court at the time that the trial court has an opportunity to correct the error. *Pipes*, 475 Mich at 277. Higdon challenges the admission of other-acts evidence on the basis that it was more prejudicial than probative. This argument is preserved. However, he did not raise issues regarding the foundation of evidence or hearsay at trial, and these arguments are not preserved.

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). The court abused its discretion if its decision fell outside the range of principled outcomes. *Norfleet*, 317 Mich App at 664. This Court reviews de novo the preliminary questions of law regarding the admission of evidence, such as whether a rule of evidence bars admitting it.[7] *Duncan*, 494 Mich at 723. When this Court engages in de novo review, this Court reviews the issue without deference to the lower court. *Bruner*, 501 Mich at 226. However, as previously discussed, this Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Carines*, 460 Mich at 763.

First, Higdon argues that the trial court improperly admitted the recorded statement of him because it had been tampered with and lacked a proper foundation. This unpreserved arguments lack merit because a witness testified that the recording was what it claimed to be, and Higdon offered no evidence to establish a question regarding the authenticity of the recording. At the time of Higdon's trial, MRE 901 required that a proponent of evidence must provide "evidence sufficient to support a finding that the matter in question is what the proponent claims." An audio recording "ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape." *People v Berkey*, 437 Mich 40, 48; 467 NW2d 6 (1991). Here, the victim testified that she met with the Higdon, spoke with him, and recorded the conversation. The evidence in the record was sufficient to support a finding that the recording was what the proponent claimed it was. The court did not err, much less plainly err, by admitting the recording.

---

[7] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the rules of evidence in effect at the time of Higdon's October 11, 2022 trial.

To the extent that Higdon argues that the recording should not have been admitted because it had been tampered with, his argument appears to implicate the best-evidence rule. At the time of Higdon's trial, the best-evidence rule provided that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." MRE 1002. However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." MRE 1003. It is well established that "[t]he best evidence rule only applies when the contents of a writing are in issue." *People v Alexander*, 112 Mich App 74, 76; 314 NW2d 801 (1981).

Nothing precluded the trial court from admitting the police copy of the recording from the phone of the victim's sister because there were no genuine questions regarding the authenticity of the recording. The victim testified that, while meeting with Higdon, she recorded the conversation with her sister's phone, and that she provided the recording to the police afterward. The trial court did not err by admitting the recording, much less plainly err.

To the extent that Higdon argues that the recording had been altered, he has not supported this assertion. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of the argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Although he argues on appeal that the conversation had been altered or did not happen, he has provided no support for his assertion. Because Higdon has not provided a factual basis for his argument, he is not entitled to reversal on this issue.

Second, Higdon argues that the jury's questions established that the taped evidence was altered, the voices could not be made out, and it was speculative whether the voice belonged to him or not. Concerns about the handling of the evidence concern the weight of the evidence, not its admissibility. See *People v Muhammad*, 326 Mich App 40, 58; 931 NW2d 20 (2018) (concerning chain of custody). Issues regarding the volume and clarity of the recording do not negate that the victim testified that she recorded the conversation with Higdon and provided it to the police. Further, the record reflects that the technical difficulties with the recording were resolved, and that after the jury expressed its concern about the clarity of the recording, the jury relistened to the exhibit. This argument concerns the weight of the evidence, not its admissibility, and we reject it.

Third, Higdon argues that there was no foundation to admit evidence of text messages between the boyfriend and Higdon, no foundation to admit Higdon's hat, and no foundation to admit evidence of bite marks. This argument is perplexing because no such evidence was admitted. To the extent that Higdon may be arguing that witnesses should not have been allowed to testify about these matters, this argument is meritless. A witness may testify about a matter about which the witness has personal knowledge. MRE 602. The witnesses permissibly testified about matters within their personal knowledge regarding conversations with Higdon, Higdon's hat, and the bite marks.

Fourth, Higdon argues that the trial court improperly admitted the victim's statements about the criminal sexual conduct because her statements to others were not excited utterances. The trial court did not err by admitting this evidence because there was sufficient indication from

the record that the victim was still under the effects of the event when she told her boyfriend about it.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[8] Hearsay is generally inadmissible, unless it is subject to a hearsay exception. See MRE 802; *Duncan*, 494 Mich at 724. The improper admission of hearsay may implicate the defendant's state and federal constitutional rights. *People v Dendel (On Second Remand)*, 289 Mich App 445, 452-453; 797 NW2d 645 (2010).

However, hearsay is admissible is if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). "[T]here is no express time limit for excited utterances." *People v Smith*, 456 Mich 543, 551-552; 581 NW2d 654 (1998). The trial court may consider indications that the witness was still in shock and under a continuing level of stress, such as whether the declarant was still crying. See *id*. at 552-553. Whether the statement is made in response to a question is not determinative. *Id*. at 553.

Here, the amount of time that elapsed between the event and the victim's statements is unclear. The victim testified that she and her boyfriend argued until about 11:00 p.m., that she smoked for about 30 to 40 minutes, and that she then showered, changed, and went to bed. She did not testify about what time the assault occurred, other than that it was early in the morning. The boyfriend testified that he got home at about 7:00 a.m. or 8:00 a.m. When the boyfriend got home, he saw that the victim had been crying. She was very distant and did not say anything at first. The boyfriend testified that he asked her what was wrong and that the victim "proceeded to give me—basically tell me what had happened but not the big details of what had happened." There was sufficient foundation to establish that the victim's statements were an excited utterance because the victim was still crying, and whether her statement responded to a question was not determinative. Higdon has not established error, much less plain error.

Fifth, Higdon argues that the trial court should not have admitted evidence of his other acts of criminal sexual conduct against another woman. The trial court did not err by ruling that evidence of his other sexual assault conduct was not substantially more prejudicial than probative.

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's propensity to engage in that type of action.

---

[8] Following amendment, MRE 801(c) now provides that hearsay

means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

-13-

*People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). However, MCL 768.27b(1) provides that a defendant's other acts of sexual assault are admissible:

> Except as provided in [MCL 768.27b(4) (concerning offenses that occurred more than 10 years before the charged offense)], in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

This evidence is admissible "*to prove any issue, even the character of the accused . . . .*" *People v Daniels*, 311 Mich App 257, 272; 874 NW2d 732 (2015) (quotation marks and citation omitted). The purpose of the statute is to give the jury a complete picture of the defendant's history, including about the likelihood that the defendant committed the crime. *Id.*

At the time of Higdon's trial, MRE 403 provided that, even if evidence is relevant, the trial court may not admit it if the probative value of the evidence is substantially outweighed by its prejudicial effect. MRE 403. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). MRE 403 is used sparingly to exclude evidence. *Daniels*, 311 Mich App at 273.

The trial court denied Higdon's motion to exclude other-acts evidence on the basis that there was "a striking similarity between the two" acts, which rendered the evidence less likely to be prejudicial. Further, the court reasoned that "the statute propensity goes in favor of probative value not unfair prejudice" and that the fact that Higdon had engaged in a similar sexual assault by entering someone's residence without permission and then assaulting them fit within the statute.

The trial court's ruling did not fall outside the range of principled outcomes. In this case, the victim and Higdon had a preexisting relationship in which they were long-term friends. Higdon had been a frequent guest in the victim's home. The victim testified that she woke up to him performing oral sex on her, with his fingers in her vagina. The victim had not given Higdon permission to enter her home. During a recorded statement, Higdon stated that he was sorry, that he made a mistake, and that he did not know how he would forgive himself.

The prior offense was similar. Higdon and the woman had had an existing intimate relationship. He entered the woman's home and ordered her to performed oral sex on him. A police sergeant testified that Higdon stated that he should have stopped, that he was wrong, and that he was sorry, and Higdon apologized to the woman. Higdon himself testified that he had admitted that he was wrong to a certain degree.

The offenses were highly similar: Higdon went into the home of a woman with whom he had a preexisting relationship of some sort, committed a sexual assault, and subsequently apologized. The purpose of the other-acts statute is to allow the admission of evidence to establish a defendant's propensity to commit a crime. Additionally, the sergeant's description of the offense involving the other woman was brief, not graphic, and not the focus of the trial. Accordingly, we

reject Higdon's argument because the evidence was more than marginally probative and it was not likely that the jury would be confused by the evidence or give it undue or preemptive weight.

## VI. PROSECUTORIAL ERROR

Higdon raises several arguments concerning prosecutorial error in his Standard 4 brief.[9] He has not established any errors warranting reversal.

As an initial matter, these arguments are not preserved. To preserve an issue for appeal, a defendant must raise it before the trial court at the time that the trial court has an opportunity to correct the error. *Pipes*, 475 Mich at 277. A defendant must promptly and specifically challenge prosecutorial error before the trial court. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Generally, this Court reviews de novo issues of prosecutorial misconduct. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). But, this Court reviews unpreserved claims of prosecutorial misconduct for plain error affecting a defendant's substantial rights. *Unger*, 278 Mich App at 235.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). The prosecutor committed misconduct if the prosecutor abandoned the responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Not all prosecutor misconduct is not constitutional error. *People v Blackmon*, 280 Mich App 253, 269; 761 NW2d 172 (2008). "[I]n order for prosecutorial misconduct to be constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *Id*. (emphasis omitted).

First, Higdon argues that the police trooper and the boyfriend improperly commented on the credibility of the witnesses. The basis for Higdon's argument is not completely clear. His two record citations do not concern any witness's having testified about the credibility of another witness.

A witness may not comment on or provide an opinion about the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). "[M]atters of credibility are to be determined by the trier of fact." *Id*. (quotation marks and citation omitted). Comments about the credibility of other witnesses have no probative value because it is solely the province of the jury to determine whether the witnesses are truthful. *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). A police officer may testify about general police procedures used to verify the events in a criminal investigation as long as the officer does not indicate a belief that a witness

---

[9] While prosecutorial misconduct is a term of art, this Court may use the term prosecutorial error to describe conduct that is not extreme or illegal. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Regardless of the term used, the same standards apply. See *id*. at 88.

testified truthfully or a witness's story was verified. *People v Bahoda*, 448 Mich 261, 281-282; 531 NW2d 659 (1995).

Contrary to Higdon's claim, the trooper's testimony regarding the decisions not to test certain pieces of physical evidence for DNA did not amount to prosecutor misconduct. The trooper testified that he did not have the assailant's hat tested for DNA because the hat had been in the victim's home many times. The trooper testified that he did not have the victim's underwear tested for DNA because it was unlikely that any DNA evidence would be obtained from the underwear. The trooper's testimony related to the process of his investigation, not an opinion on whether the victim had been sexually assaulted or was telling the truth.

Similarly, the boyfriend's elicited statement that he did not know what had occurred when Higdon stopped at the house was not prosecutor misconduct. The statement did not offer an opinion about whether any witness was telling the truth. Because neither statement concerned the sort of impermissible credibility bolstering that would invade the province of the jury, we reject this argument.

Second, Higdon argues that the prosecution denigrated his character to the jury and invaded the province of the jury by arguing that he had previously committed a sexual assault. The prosecutor may not "denigrat[e] a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. However, when a defendant's prosecutorial-misconduct argument is "essentially an evidentiary issue framed as prosecutorial misconduct," this Court determines whether the prosecutor acted in good faith. *Dobek*, 274 Mich App at 70-71. "A prosecutor's good-faith effort to admit relevant evidence does not constitute misconduct." *Id*. at 70. As previously discussed, the prosecution properly sought to admit evidence of Higdon's other acts of sexual assault. This evidence was ultimately admissible. The prosecution's discussion of this evidence did not constitute misconduct.

Third, Higdon argues that the prosecutor attacked him on the witness stand by preventing him from correcting a partial misunderstanding of the police sergeant's testimony regarding his previous offense. At times during cross-examination, the prosecution interrupted Higdon and asked him to answer in a "yes or no" format. This was not the sort of intemperate, prejudicial remark that would so affect the trial's fundamental fairness to the extent that it violated Higdon's due-process rights.

Fourth, Higdon argues that the prosecutor committed misconduct by denying him the opportunity to consult with counsel of his choice while he was in jail. The record does not support Higdon's assertion. Again, the party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of the argument. *Elston*, 462 Mich at 762. Higdon moved for new counsel on the basis that his appointed trial counsel had not consulted with him, was not prepared for hearings, required Higdon to repeat case details to him, and continuously argued about the case with him. Higdon indicated that he preferred another attorney by name. But, at the hearing, he gave no indication that he was not allowed to consult with counsel of his choice. Because he has not provided any record evidence that supports his assertion, we reject this claim.

Fifth, Higdon argues that the prosecutor committed misconduct by attempting to get him to waive his preliminary examination. Similar to Higdon's argument regarding counsel of his choice, the record does not support this assertion. Higdon had a preliminary examination, and if anyone attempted to persuade him to waive the examination, such evidence is not present in the record.

Sixth, Higdon argues that the prosecutor committed misconduct by failing to provide him with exculpatory evidence concerning pictures of the hat or supplemental notes of the police trooper, violating *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). This argument lacks merit because the evidence to which Higdon refers was not exculpatory.

A criminal defendant can demonstrate that the prosecutor violated the defendant's due-process rights under the Fourteenth Amendment if the prosecutor, in bad faith, failed to preserve material evidence that might have exonerated the defendant. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). The prosecutor must give the defendant any favorable evidence that is material to guilt or punishment. *Brady*, 373 US at 87. If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the prosecutor's failure to preserve evidence did not deny the defendant due process. *Youngblood*, 488 US at 57. The defendant must show that the evidence was exculpatory or the prosecutor acted in bad faith. *People v Hanks*, 276 Mich App 91, 95-96; 740 NW2d 530 (2007).

There is no indication in the record that the pictures of the hat were exculpatory evidence or that the prosecution withheld them in bad faith. If anything, the evidence that a hat that was frequently worn by Higdon was at the scene of the crime was *inculpatory*. There is no indication that the evidence would have been beneficial to the defense. Further, there is no indication in the record that any supplemental notes about the incident were exculpatory. Accordingly, Higdon has failed to establish that a *Brady* violation occurred.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, Higdon raises numerous allegations that defense counsel provided him with ineffective assistance. A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). However, defense counsel is not required to make meritless or futile objections. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

As an initial matter, we reject Higdon's various assertions that counsel provided ineffective assistance by failing to raise the issues he has raised in his Standard 4 brief before the trial court. For the reasons previously discussed, each of these issues lacks merit and counsel need not make meritless objections.

Higdon also argues that counsel provided ineffective assistance by writing a brief in the wrong format, failing to regularly meet with Higdon to stay up-to-date on his case, failing to contact witnesses, and failing to advance an alibi defense.

Defense counsel may be ineffective for failing to reasonably investigate a defendant's defenses. See *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel has the duty to make reasonable investigations and exercise professional judgment in matters related to the defense. *Trakhtenberg*, 493 Mich at 52-53. A failure to meet with a defendant to the degree he desires, standing alone, does not support a defendant's ineffective-assistance claim when defense counsel displayed an adequate knowledge of the evidence and was prepared to cross-examine the prosecution's witnesses. *People v Payne*, 285 Mich App 181, 189; 774 NW2d 714 (2009). The record indicates that defense counsel adequately cross-examined the witnesses.

Further, Higdon's argues that defense counsel did not pursue an alibi defense. Defense counsel called Higdon's mother, who testified that she had locked up the car keys, and that Higdon was home between 10:00 p.m. and about 1:15 a.m., which was when he left to go help the victim's boyfriend. Counsel argued in closing that the jury "heard from his mother who testified that he was at her house until—their house until 1 o'clock, when he received a phone call from his friend [the boyfriend], he came in and got the keys from her, and left her house at approximately 1:15, 1:30 somewhere around there went out to help [the boyfriend]." Higdon's argument that counsel did not pursue an alibi defense lacks record support.

Higdon also argues that defense counsel failed to investigate three witnesses. Counsel may provide ineffective assistance by failing to call witnesses who supported a defendant's version of events if there was no strategic reason to not do so. *People v Bass*, 247 Mich App 385, 392; 636 NW2d 781 (2001). But, without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness constituted ineffective assistance. *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). We reject this argument because Higdon has not identified the witnesses that defense counsel should have investigated, much less identified the witnesses' testimony or established that the witnesses would have testified favorably.

Finally, Higdon argues that defense counsel failed to write a pretrial motion in the correct format. The factual basis for Higdon's assertion is unclear. From our review of the record, it does not appear that any of defense counsel's motions were in an improper format. It is possible that Higdon is referring to counsel's motion to exclude his other acts of domestic violence, despite that the record does not reflect a formatting issue with this motion. Rather, counsel appears to have misunderstood the other-acts evidence as concerning domestic violence rather than criminal sexual conduct, but after withdrawing the motion on this theory, counsel pivoted to instead arguing that the other-acts evidence was more prejudicial than probative. If Higdon is interpreted as arguing that counsel provided ineffective assistance by changing the basis for his motion at the hearing, Higdon has not provided any argument about how doing so prejudiced him when the evidence was admissible. Because a defendant must establish both prongs of the ineffective-assistance test, this Court may reject an ineffective-assistance claim on the basis of lack of prejudice alone. *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995). On this basis, we reject this argument.

To the extent that Higdon may be interpreted as raising any other issues in his Standard 4 brief, we deem these issues abandoned for lack of proper briefing. See *Iannucci*, 314 Mich App at 545.

We affirm.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford